UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

ALLSTATE INSURANCE COMPANY
A/S/O THOMAS AND LISA ELLIS

       v.

LG ELECTRONICS U.S.A., INC.

NO. 19-3529

**BRIEF IN SUPPORT OF MOTION IN *LIMINE* OF DEFENDANT, LG ELECTRONICS U.S.A., INC. TO PRECLUDE TESTIMONY OF CHRISTOPH J. FLAHERTY, P.E. AND FOR ENTRY OF SUMMARY JUDGMENT IN FAVOR OF LG ELECTRONICS U.S.A., INC.**

       Defendant, LG Electronics U.S.A., Inc. (hereinafter "LGEUS"), by and through its attorneys, Sweeney & Sheehan, hereby moves this Honorable Court, in *limine*, to preclude Christoph J. Flaherty, P.E., from testifying at trial as an expert for Allstate Insurance Company a/s/o Thomas and Lisa Ellis ("Plaintiff") and to enter judgment in favor of LGEUS. Alternatively, LGEUS requests a *Daubert* hearing.

**I.    <u>SUMMARY OF FACTS</u>**

       The facts and bases in support of the relief being requested by Defendant are set forth in the accompanying Motion in *Limine* of Defendant, LG Electronics U.S.A., Inc. to Preclude Testimony of Christoph J. Flaherty, P.E. and for Entry of Summary Judgment in favor of LG Electronics U.S.A., Inc., which are incorporated herein as if set forth in full. Based upon these facts, and for the reasons set forth below, Christoph Flaherty should be precluded from testifying as an expert witness in this case, as a result of which preclusion, Plaintiff cannot prove its claims. LG Electronics USA, Inc. is entitled to judgment as a matter of law.

1

II.     **CONCISE   STATEMENT   OF   THE   LEGAL   CONTENTIONS   AND
AUTHORITIES**

Under the Federal Rules of Evidence, the admissibility of expert opinion testimony is

governed by Rule 702, which reads as follows:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized
>         knowledge will help the trier of fact to understand the
>         evidence or to determine a fact in issue;
>
> (b)     the testimony is based upon sufficient facts or data,
>
> (c)     the testimony is the product of reliable principles and
>         methods, and
>
> (d)     the witness has applied the principles and methods reliably
>         to the facts of the case.

Fed. R. Evid. 702.

Each of these requirements must be satisfied.  The party offering the expert has the

burden of proving all the elements of admissibility by a preponderance of the evidence, although

the standards of admissibility are liberal and exclusion is not favored.  *Comcast Cable

Communications, LLC*, 218 F. Supp. 3d at 381.

The Supreme Court examined the admissibility of expert testimony under Federal Rule of

Evidence 702 in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[1]  The

*Daubert* Court underscored the trial court's role as a "gatekeeper" under Rule 702, requiring that

to be admissible, proffered expert testimony must (1) be derived from a reliable methodology

---

[1] At the time the *Daubert* opinion was issued, Rule 702 read as follows: "If scientific, technical,
or other specialized knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,
training, or education, may testify thereto in the form of an opinion or otherwise."  509 U.S. at
580.  Subsequent to *Daubert*, Rule 702 was amended to conform the holdings in *Daubert*.

and (2) fit the issues to be decided at trial. *Daubert*, 509 U.S. at *579 see also, In Re Paoli R.R. Yard Litigation*, 35 F.3d 717 (3d Cir. 1994), cert. denied 513 U.S. 1190 (1995). While *Daubert* dealt with purely scientific testimony, the Supreme Court later specifically extended the *Daubert* rationale to all expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137(1999).

Under *Daubert* and under Rule 702, there are three major prerequisites for admission of expert testimony: "(1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *See Furlan v. Schindler Elevator Corp.*, 864 F. Supp. 2d 291, 295-296 (E.D. Pa. 2012), (*quoting In re Paoli R.R. Yard PCB Litig.* (Paoli II), 35 F.3d 717, 742 (3d Cir.1994) *aff'd* 516 Fed. Appx. 201, 205 (2013); *see also, Comcast Cable Communications, LLC v. Sprint Communications Company, LP*, 218 F. Supp. 3d 375, 380-381 (E.D. Pa. 2016) ("Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit.")(*citing Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000.)[2]

To establish reliability, the testimony "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his on [sic] her belief." *Furlan*, 516 Fed. Appx. at 205; *see also, Daubert*, 509 U.S. at 595 (In addition, the Court stressed that, *ab initio*, "in order to qualify as scientific knowledge, an inference or assertion must be derived by the scientific method.") The trial court's inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be

---

[2] For purposes of this motion, LGEUS does not contest the qualifications of Mr. Flaherty as an expert in electrical engineering.

applied to the facts in issue." *In Re Paoli R.R. Yard Litigation*, 35 F.3d at 743.   In *Daubert*, the Court identified the following non-exclusive factors to consider when determining if a scientific methodology was employed as follows: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *See Paoli*, 35 F.3d at 742.

To satisfy the fit requirement, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Furlan*, 516 Fed.Appx. at 205; *Daubert* 509 U.S. at 591.   In *Daubert*, the Court explained "'An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute'. The consideration has been aptly described by Judge Becker as one of 'fit...' 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." 509 U.S. at 591 (*citing U.S. v. Downing*, 753 F.2d 1224, 1242 (1985); *see also, Comcast Cable Communications, LLC*, 218 F.Supp.3d at 381.

In addition, to be admissible, the expert testimony must satisfy the burden of proof standards for expert testimony adopted by the Pennsylvania courts.   *See In Re Paoli R.R. Yard Litigation*, 35 F.3d at 750-751.   The Third Circuit specifically has held that Pennsylvania's requirement that an expert's opinion must be given to a reasonable degree of professional certainty is a substantive rule that applies in federal court.   *Id.*   In this regard, under Pennsylvania

case law, when a "party must prove causation through expert testimony, the expert must testify with 'reasonable certainty' that 'in his professional opinion,' the result in question did come from the cause alleged." *Childers v. Power Line Equipment Rentals, Inc.,* 452 Pa. Super. 94, 109-110. 681 A.2d 201, 209-210 (1996); *Betz v. Erie Ins. Exchange,* 957 A.2d 1244, 1258-1259 (2008); *Niggel v. Sears, Roebuck and Company,* 219 Pa. Super. 353, 354-355, 281 A.2d 718, 719 (1971.)  Statements such as "possibly", "could have", "could very probably account" or even "very highly probable", "fail this certainty standard." *Childers,* 452 Pa. Super. at 109-110, 681 A.2d at 209-210; *Niggel,* 219 Pa. Super. at 354-355, 281 A.2d at 719.

## III.   ARGUMENT

Based on the preceding case law, for multiple reasons, Mr. Flaherty should be barred from testifying in this case.

Mr. Flaherty has advanced two separate and mutually exclusive opinions of what caused the subject fire: 1) an overheated internal light bulb that ignited an unknown combustible material within the refrigerator or 2) damage to the insulation of a wire in the refrigerator's FD-HTR circuit which led to an electrical arc which ignited unknown combustible material.  Mr. Flaherty's attempt to opine as to two mutually exclusive causes of the fire will not assist the jury, since these opinions do not make any fact in the case more probable than it would be without the opinion.  Also, they are not admissible since these opinions are not rendered to a reasonable degree of certainty, as required by Pennsylvania law.

In addition, Mr. Flaherty's opinions as to causation are not supported by any evidence in the case and, in fact, are contrary to undisputed evidence and, in the case of the electrical arc, even contrary to Mr. Flaherty's own opinion.

Finally, Mr. Flaherty's opinions fly in the face of *Daubert* and Rule 702 to the extent they are not the product of proper scientific methodology.

Mr. Flaherty should be precluded from testifying at trial, and since Plaintiff cannot establish the elements of its claims against LGEUS without Mr. Flaherty's testimony, LGEUS is entitled to summary judgment.

### A.  Mr. Flaherty cannot testify to his opinions about the cause of the fire because his testimony would not be helpful to a jury

Under the Federal Rules of Evidence it is fundamental that an expert witness can testify only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue..." Fed. R. Evid. 702(a). Under Rule 702(a) and the guiding case law, baseless and factually unsupported opinions are not helpful to the trier of fact and, therefore are inadmissible. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)(Under *Daubert* and the Federal Rules of Evidence, expert testimony must be based on application of scientific or technical principles to the facts of the case and nothing requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.)

Mr. Flaherty's proffered opinions fail this threshold requirement for admissibility of expert testimony.  Mr. Flaherty's ultimate conclusion in this case is that "Potential fire causes within the area of fire origin inside the top of the Ellis refrigerator are limited to failure of the FD-HTR heater circuit insulation due to mechanical damage sustained over years of use <u>or</u> ignition of combustible food storage containers close to, or in contact with, the internal light fixture..." (Emphasis added.)  In sum, Mr. Flaherty cannot actually state what occurred but only can identify what he considers unrelated possibilities.  This cannot be considered helpful to the jury.

Indeed, such testimony is not even relevant.  The Federal Rules of Evidence define relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence." See Fed. R. Evid. 401.  For his testimony to be relevant, Mr. Flaherty must testify that in his professional opinion, to a reasonable degree of certainty, a certain condition caused the fire.  Absent such certainty, his testimony does not make any fact at issue more probable than it would be without his testimony, it does not qualify as "relevant evidence", would not be helpful to the jury, and ergo, it cannot be presented to the jury. *Daubert*, 509 U.S. at 591 ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."); *see also*, *Barefoot v. Weyerhaeuser NR Company*, 729 Fed.Appx. 300, 303 (5th Cir. 2018) (Moreover, when an expert's opinion lacks sufficient certainty and is equivocal it does not satisfy the helpfulness requirement.)

This result also is dictated by application of Pennsylvania's rules regarding the burden of proof for expert testimony.   As discussed above, Pennsylvania's rule that an expert render an opinion as to causation to a reasonable degree of certainty applies to Mr. Flaherty's opinions here.  Based upon the clear language of his report, he cannot satisfy this requirement.  The Pennsylvania Superior Court has explained this requirement as follows: "to be competent, expert testimony must be stated with reasonable certainty." [citation omitted]  The purpose of this standard is not, however, to render proof needlessly difficult, but to avoid speculation under the rubric of 'expert opinion.' Accordingly, '[i]t is not enough to say that something could have happened. Anybody can guess. **Expert testimony must assert that it is the professional opinion of the witness that the result in question came from the cause alleged.**'" *Betz*, 957

A.2d at 1258 (*quoting Woods v. Pleasant Hills Motor Co.*, 454 Pa. 224, 309 A.2d 698, 703 (1973)(Emphasis added.)  Whether the expert's testimony is rendered to the requisite degree of certainty, we examine the expert's testimony in its entirety. *Betz*, 957 A.2d at 1259.

Applying these principles here, Mr. Flaherty cannot testify to his opinions regarding possible causes of the fire.  Nowhere in his report does Mr. Flaherty state that, in his professional opinion, "the result in question (the fire) came from the cause alleged (an overheated light bulb or a damaged wire).  On the contrary, Mr. Flaherty's report makes clear that "...**the potential** of a fire starting as the result of the light remaining 'on' for an extended time with combustible food storage containers in contact with it cannot be discounted..."  Exhibit "E" at p. 5.  Similarly, other parts of his report refer to "Potential fire causes within the area of fire origin..."  *Id.* Moreover, at his deposition, Mr. Flaherty admitted that he only could identify two potential causes of the fire, but "was not able to within a reasonable degree of engineering or scientific certainty determine which one of those two it was."  Exhibit "F" at p. 78, lines 11-24.   Under Pennsylvania law, these statements are insufficient to satisfy the requirements of expert testimony, are no better than a speculative guess and are not admissible.   *Childers*, 452 Pa. Super. at 109-110. 681 A.2d at 209-210.[3]

Apparently recognizing this dilemma, Plaintiff is attempting to have Mr. Flaherty testify that while he cannot individually opine, to a reasonable degree of certainty, which one of these conditions caused the fire, he can opine that one of them did.  Plaintiff is not entitled to do so,

---

[3] Straying further from the realm of reasonable certainty, as to one of those potential causes, the electrical arc, Mr. Flaherty admits that he does not know and cannot opine whether the electrical arc caused the fire or resulted from the fire.  Exhibit "E", p. 6, Section 5, Conclusions, para. 4. As such, while on the one hand he identifies it as one of the two possible causes of the fire he also acknowledges that it may not be.

and indeed, to allow Mr. Flaherty to opine that the fire was caused by either of these scenarios, would be the height of bootstrapping or circular logic.

Ultimately, this inability is fatal to Plaintiff's ability to call Mr. Flaherty. *See e.g.*, *Lanza v. Poretti*, 537 F. Supp. 777, 786-787 (E.D. Pa. 1982*)*. *Lanza* also involved a fire case. In *Lanza*, the Plaintiff attempted to call an expert to testify as to the cause of the fire. *Lanza*, 537 F. Supp. at 786-787. Outside the hearing of the jury, the expert testified that "after eliminating other possible causes, in his opinion the fire was caused by either 'the possibility of arson or possible careless disposal of cigarette materials.'" *Id.*   The Court precluded the jury from hearing this testimony since the witness was unable to testify to a "reasonable degree of scientific certainty what he believed to be the cause of the fire" and therefore, his testimony would not "assist the trier of fact in reaching a conclusion as to the cause of the fire." *Id.*[4]   For the same reasons, Mr. Flaherty cannot opine as to the cause of the fire and his testimony should be precluded.[5]

B.   **There is no factual or scientific basis for Mr. Flaherty's opinions regarding the cause of the fire, and thus, such testimony is inadmissible**

Putting aside that offering two alternative causes of the fire would not "assist" or "help" the jury, there are additional reasons why Mr. Flaherty's testimony must be barred. Mr. Flaherty purports to opine that the fire was caused by either (1) an overheated light bulb which ignited combustible food storage containers; or, (2) an electrical arc on the FD-HTR heater circuit wire

---

[4] The Court did allow the expert to testify as to what did not cause the fire, since he could do so to a reasonable degree of certainty.

[5] By saying that Mr. Flaherty cannot offer an opinion with the requisite certainty as to individual causes but can so opine as to the overall issue of causation, Plaintiff is attempting the legal equivalent of adding two negative numbers to equal a positive number. It does not work in mathematics and is equally unavailing in the law.

harness' which ignited unknown material.  Mr. Flaherty's report and testimony provide no basis to for him to testify to **either** opinion and, therefore, his opinions are not admissible.

> 1. **Mr. Flaherty cannot testify that an overheated light bulb caused the fire**

>> a. **Mr. Flaherty cannot render this opinion because there is no factual basis for it and it does not "fit" the case**

Federal Rule of Evidence makes clear that an expert's opinions must be based on "sufficient facts or data."  Fed. R. Evid. 702(b).  As respects this requirement of the law, the Supreme Court has found that "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.  *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).  Likewise, the courts of this district have noted that while the Court's "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate, a district court must examine the expert's conclusions In order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 441 (E.D. Pa. 2013); *State Farm Fire and Cas. Co. v. Holmes Products*, 165 Fed. Appx. 182, 186 (3rd Cir. 2006)(Expert could not offer opinion on causation when his theory was based on unproven factual scenario about which he speculated).

When expert testimony is based upon assumptions lacking any factual foundation in the record, it is an abuse of discretion to admit that testimony.  *Stecyk v. Bell Helicopter Textron*, 295 F.3d 408, 414 (3rd Cir. 2002).  Cases from other districts and Circuits support this view. *Guillory v. Domtar Industries Inc.*, 95 F.3d 1320, 1331 (1996)("an opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant. In any event such

an opinion will not advance the express goal of 'assisting the trier of fact' under rule 702");
*Eberli v. Cirrus Design Corp.*, 615 F.Supp.2d 1357, 1367 (S.D. Fl. 2009).  In sum, when the facts on which the expert relies do not exist, the expert cannot offer opinions based on such non-existent facts.

Mr. Flaherty's opinion that the light bulb ignited combustibles requires proof that on the date of the incident the following happened: (1) the light bulb remained on despite the doors being closed, (2) overheated, and (3) ignited an object inside the refrigerator, causing the fire.  In order for the preceding to have happened, **all** of the following would have to occur: the light circuit relay (that turns the light off when the doors are shut) would have had to fail allowing the light bulb to remain on despite the doors being closed; the light bulb would have had to get hot enough to ignite combustibles; a thermal protector designed to deenergize the light circuit (if the light bulb got too hot) would have to be absent or fail to function; there would have to be combustibles in the refrigerator and they would have to be close enough to the light bulb to ignite.  Since the record is devoid of any evidence of any of these facts, Mr. Flaherty lacks a sufficient factual basis for these opinions

First, the threshold factual necessity for Mr. Flaherty's opinion that the light bulb caused the fire is the existence of evidence that the light bulb in the Ellis' refrigerator ever remained on when the doors were closed.  No one has so testified that this situation existed and the Ellises never have made such a claim. . Exhibit "F" at p. 56, line 21 to p. 58, line 2; p. 73, line 10 to p. 74, line 1.  Mr. Flaherty admitted at his deposition that he is aware of no such evidence, and that he cannot so opine that the light remained based on any actual evidence regarding the condition of the Ellis' refrigerator on the incident date.  *Id.*  In sum, there is no direct evidence that this condition existed.

Given the lack of any actual, direct evidence that the light bulb in the Ellis' refrigerator remained on with the doors closed, Mr. Flaherty is attempting to rely on circumstantial evidence to prove this fact. Specifically, Mr. Flaherty's opinion regarding the overheated light bulb theory is based on an issue discovered and addressed in some models of LG refrigerators that experienced a condition in which the refrigerator's internal light bulb would remain on despite the doors being closed (which should turn off the light). This caused the light bulb to overheat and cause melting and discoloration of surrounding materials, and food spoilage. A root cause analysis performed by defendant's parent company, LG Electronics, Inc. (the manufacturer of the refrigerator), determined that the problem was caused by a relay (switch) on the printed circuit board (PCB) that was supposed to "open" when the doors were closed, de-energizing the light circuit. The analysis showed that on a small percentage of units, the relay would "stick" and not open when the doors were closed, causing the light to stay on. LG Electronics, Inc. addressed this issue in 2008 by changing to a larger, more robust relay that would not stick. In addition, a thermal protector was added to the circuit that would de-energize the light bulb circuit if the light bulb got too hot. As discussed further below, none of the problematic conditions existed in the Ellis' refrigerator in March 2019, and therefore, this evidence is not relevant and any reliance on it by Mr. Flaherty is improper.

In both his report and at his deposition, Mr. Flaherty conceded that the original Printed Circuit Board ("PCB") in the Ellis' refrigerator had been replaced more than 10 years before the loss with the new PCB having the larger relay. Exhibit "F" at p. 38, lines 7-13. Moreover, Mr. Flaherty admitted that there is no evidence that the larger relay would stick and allow the light to stay on. Exhibit "F" at p. 35, line 23 to p. 36, line 13; p. 39, lines 16-21; p. 58, lines 8-19. The preceding unequivocally demonstrates that the lone factual basis for Mr. Flaherty's opinion that

the fire started because the internal light bulb would remain on is non-existent, since the Ellis' refrigerator did not have the PCB with the relay that could stick, and there is no evidence that the newer version of the relay had this issue.

Second, to offer the opinion that the light bulb caused the fire, Mr. Flaherty also needs facts showing that the light bulb could have overheated and ignited something, if it remained on. There is no such evidence that this occurred either.   As with Mr. Flaherty's opinion regarding the light remaining on, Mr. Flaherty opines that the light bulb could sufficiently overheat to cause a fire based on the light overheating issue addressed in 2007-2008.   Specifically, Mr. Flaherty opined that "the potential of a fire starting as the result of the light remaining 'on' for an extended time with combustible food storage containers in contact with it cannot be discounted since the Ellis refrigerator lacked the thermal protection which would have de-energized an overheating light." Exhibit "E" at p. 5, Section 4 (last full paragraph.)  However, as set forth in LGEUS' motion, this statement is, simply put, wrong since, the Ellis' refrigerator was manufactured with the thermal protector that Mr. Flaherty claims it lacked.   At his deposition, Mr. Flaherty acknowledged that this was a mistake on his part, that he was incorrect and that the refrigerator did, in fact, have a thermal protector.  Exhibit "F" at p. 69, lines 14-24; p. 70, line 11 to p. 71, line 13.   Finally, Mr. Flaherty admits that he has no evidence there were any issues with the thermal protector in this case.   In sum, there is no evidence that absence of a thermal protector allowed the light bulb to overheat such that it could have caused a fire.  For this reason as well, this opinion is inadmissible.

Finally, even assuming *arguendo* that the light bulb remained on with the refrigerator doors closed on March 10, 2019 (of which there is no evidence) and the thermal protector failed, Mr. Flaherty admits that unless a combustible object was sufficiently close to the light bulb to

ignite, then overheating of the light bulb could not have caused the fire.  Exhibit "F" at p. 77, lines 15-23.  In this regard, Mr. Flaherty's testimony makes clear that he has no factual basis to conclude that the light bulb actually ignited any material on the incident date.  Mr. Flaherty admitted that he does not know what specifically was in the refrigerator before the fire (Exhibit "F" at p. 53, lines 6-21; p. 76, line 23 to p. 77, line 6), or where any such food items were located in the refrigerator before the fire (Exhibit "F" at p. 55, lines 15-24; p. 77, lines 7-13), or whether they were combustible (Exhibit "F" at p. 76, lines 13-21.)   Mr. Flaherty has no evidence that any object in the refrigerator was close enough to the light bulb to allow it to be ignited (Exhibit "F" at p. 78, lines 1-10).

Ultimately, there is no support for, nor "fit" between, Mr. Flaherty's opinions and the facts of the case.  Mr. Flaherty cannot an offer an opinion based on these non-existent facts and, as such, his testimony that the light bulb ignited an object inside the refrigerator is inadmissible. *State Farm v. Steffen*, 948 F. Supp. 2d at 441.

> **b.     Mr. Flaherty's opinion that an overheated light bulb caused the fire is not based on any scientific methodology, as required by *Daubert* and Rule 702**

As noted above in the summary of the law, the gist of *Daubert* and Federal Rule of Evidence 702 is that, to be admissible, expert testimony must be based on application of scientific or technical principles to the facts of the case. Rule 702(c); *see e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  As the Court explained in *Daubert*:

> the subject of an expert's testimony must be '**scientific ... knowledge**.'   The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word knowledge" connotes more than subjective belief or unsupported speculation. The term 'applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.' Webster's Third New International Dictionary 1252 (1986).... ('Science is not an encyclopedic body of knowledge

> about the universe. Instead, it represents a **process** for proposing
> and refining theoretical explanations about the world that are
> subject to further testing and refinement' (emphasis in original)).
> But, in order to qualify as 'scientific knowledge,' an inference or
> assertion must be derived by the **scientific method**. Proposed
> testimony must be supported by appropriate validation—i.e., 'good
> grounds,' based on what is known. In short, the requirement that an
> expert's testimony pertain to 'scientific knowledge' establishes a
> standard of evidentiary reliability"

*Daubert*, 509 U.S. at 590. (Except as noted, emphasis supplied).

Under *Daubert*, the trial court's inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *In Re Paoli R.R. Yard Litigation*, 35 F.3d at 742. Here, Mr. Flaherty's proposed opinion as to the overheating light bulb as the cause of the fire also fails to satisfy this requirement since it involves no scientific method or process.

Examining Mr. Flaherty's report and testimony, there is nothing scientific about how he arrived at this conclusion, including use of any scientific methodology or analysis. On the contrary, other than reviewing the case materials and opining that the overheated light bulb scenario was **possible**, Mr. Flaherty did nothing to support this hypothesis. Mr. Flaherty made no attempt to reconstruct what occurred and performed no tests or other technical analysis to prove that an overheated light bulb caused this fire.   In fact, at his deposition, Mr. Flaherty conceded that due to the number of unaccounted for factual variables, he could not perform any tests relating to the thermal characteristics of the light bulb in the Ellis' refrigerator and whether it was hot enough to ignite an object. Exhibit "F" at p. 50, line 11 to p. 51, line 24.  Similarly, because he does not know if any items were around the light bulb before the fire Mr. Flaherty did not conduct any tests to determine whether the light bulb could have ignited an object.  Exhibit

"F" at p. 56, lines 5-15.  He did not test the relay to determine if it functioned properly.  Exhibit "F" at p. 36, line 20 to p. 37, line 1.  In sum, there is nothing scientific about his methods or opinion which is devoid of application of any scientific processes.  Therefore, this opinion is inadmissible.

> **2.   Mr. Flaherty cannot testify to his alternate theory - that mechanical damage to the insulation led to an electrical arc that caused the fire - since there likewise is no factual basis for this assertion and is nothing more than speculation**

Mr. Flaherty's alternate theory as to the cause of the loss is that mechanical damage to the insulation on a wire harness led to an electrical arc that caused the fire.  Specifically, he asserts that "Potential fire causes within the area of fire origin [identified by Mr. Buckley]" was failure of the FD-HTR heater circuit insulation due to mechanical damage."  Exhibit "E" at p., Section 5, Conclusions, paragraph 5.  For the same reasons discussed in Section 1.a., Mr. Flaherty cannot testify to this opinion because there simply is no evidence to support it and Mr. Flaherty cannot cite to any.

Mr. Flaherty asserts that mechanical damage to the wiring harness potentially was caused by improper installation of the harness or a routing issue or error, which could have caused the insulation to be subject to physical damage after manufacture, possibly causing the fire.  Exhibit "F" at p. 107 line 17 to p. 109, line 14.  However Mr. Flaherty concedes that he is aware of no evidence that the wiring harness in this 11 year old refrigerator was improperly installed or routed.  Exhibit "F" at p. 107 line 17 to p. 109, line 14; p. 110, lines 5-17.  Indeed, the sole basis for this statement is the occurrence of the fire.  *Id.*   Further proof that this is nothing more than speculation comes from Mr. Flaherty himself who admits to not knowing whether the electrical activity on the wiring harness, i.e., the arc, was "a cause or a symptom of the fire..."  Exhibit "F" at p. 107 lines 17 to 24.   The importance of this passage from Mr. Flaherty's report cannot be

overstated.  Mr. Flaherty is undermining his own opinion that the electrical arc was one of two possible cause of the fire by conceding that the electrical arc may have been <u>caused by</u> the fire. Further, in his deposition, Mr. Flaherty reaffirmed that he could not opine to a reasonable degree of certainty whether the electrical arc caused or was the cause of the fire.  Exhibit "F" at p. 78, lines 11-24.

In this case, under the applicable governing law, Mr. Flaherty is precluded from testifying that mechanical damage to the insulation of the wire harness caused the fire.  First, as made clear above, under Rule 702 requires that an expert's testimony be based on "sufficient facts or data." Fed. R. Evid. 702(b).  Since Mr. Flaherty's opinion in this regard is lacking sufficient, or any, facts to support it, it is not admissible.  *Stecyk*, 295 F.3d at 414.  Further, to the extent Mr. Flaherty's opinion about the damage to the wiring harness is premised solely on the existence of the fire, it is not admissible since the happening of an accident is not proof of a product defect or negligence. *Chapman v. Chaon*, 619 Fed. Appx. 185, 187-188 (3rd Cir. 2015); *Engle v. Spino*, 425 Pa. 254, 257, 228 A.2d 745, 746 (1967); *Zito v. Merit Outlet Stores*, 436 Pa. Super. 213, 647 A.2d 573, 574–75 (1994); *Moultrey v. Great A & P Tea, Co.*, 281 Pa. Super. 525, 422 A.2d 593, 596 (1980).  Last, to the extent, Mr. Flaherty only can speculate as to whether the electrical arc on the wiring harness was "a cause or a symptom of the fire..." this testimony must be excluded for that reason as well.  *Furlan*, 516 Fed. Appx. at 205.

C.     **Mr. Flaherty's testimony should be precluded because he failed to properly utilize the methodology he chose to employ**

As established in the summary of law above, expert testimony is only admissible if it is based on the methods and procedures of science."  The expert's opinions must be derived from application of the scientific method. *Daubert*, 509 U.S. at 595.  Moreover, the trial court cannot admit a proffered expert's testimony, unless it determines that the "reasoning or methodology

underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *In Re Paoli R.R. Yard Litigation*, 35 F. 3d at 743. Under these principles, Mr. Flaherty's testimony should be precluded because as a whole his opinions are not based upon the application of a reliable methodology.

Mr. Flaherty testified that he analyzed this case using the methodology adopted in National Fire Protection Association (NFPA) Standard 921. Exhibit "F" at p. 130, line 18 to p. 131, line 3. Mr. Flaherty testified that the NFPA 921 methodology involved the following steps: to gather data, form hypotheses, test hypotheses, reanalyze hypotheses and arrive at a final hypothesis. Exhibit "F" at p. 131, line 4 to p. 132, line 5. Mr. Flaherty testified that in order to arrive at a definitive cause, "you would select the final hypothesis and look at alternative causes." *Id.* at p. 132, lines 6-14. Mr. Flaherty further stated that "if you are able to eliminate your other hypotheses, your selection of the final hypothesis would be the cause" and "a hypothesis is a scientific idea that you can test." *Id.* at p. 132, lines 14   Mr. Flaherty conceded in his deposition that he did not come up with a final hypothesis for the cause of the fire because he has competing hypotheses. *Id.* at p. 133, lines 13 - 22. Mr. Flaherty performed no testing with respect to either of the hypotheses that he came up with in the case. *Id.* at p. 134, lines 11-15. Other than reviewing the root cause analysis documents prepared by the refrigerator manufacturer, which demonstrate that the light bulb could not have caused this fire, Mr. Flaherty performed no research regarding either of the hypotheses. *Id.* at p. 135, line 14 to p. 136, line 10.

While NFPA 921 is an acceptable methodology for analyzing the cause of the fire, Mr. Flaherty did not apply it in a reliable fashion since he never completed it and formed a final hypothesis nor performed testing or research which might have eliminated either (or both) of the two hypotheses that he formed. Because Mr. Flaherty's opinions are not based upon the proper

application of the NFPA 921 methodology, they are not reliable under the Daubert standard and therefore, inadmissible.

**D.      Mr. Flaherty cannot testify that the refrigerator was defective when placed in the stream of commerce**

Finally, putting aside the issues of causation, to the extent Plaintiff is offering Mr. Flaherty to establish the existence of a product defect, this testimony also is barred.  Through his report (as elucidated by his testimony), Mr. Flaherty identified three possible defects in the product: (1) a sticking relay; (2) lack of thermal protection; and (3) improper installation or routing of the wiring harness.   Mr. Flaherty is unable to testify that any of these alleged defective conditions existed.

As made clear above and in its Motion, Mr. Flaherty admits that the Ellis' refrigerator, at the time of the fire, had the larger, more robust relay and there is no evidence that this relay had any issues or caused the light bulb to remain on with the doors in the closed position.  There is no evidence that the refrigerator lacked thermal protection, and Mr. Flaherty's original assertion it did was based on a "mistake" by Mr. Flaherty, since the Ellis' refrigerator was manufactured with a thermal protector.  Exhibit "F" at p. 69, lines 14-24; p. 70, line 11 to p. 71, line 13. Finally, there is no evidence that the wiring harness was not properly installed or routed and, Mr. Flaherty cannot rely on the happening of the fire to opine that it was.  *Chapman*, 619 Fed. Appx. at 187-188; *Moultrey*, 281 Pa. Super. 525, 422 A.2d at 596.

**E.      Without Mr. Flaherty's testimony, Plaintiff cannot establish the elements of its claims and thus, LGEUS is entitled to summary judgment**

To recover on a claim of strict product liability pursuant to § 402A of the Restatement (Second), a plaintiff must establish (1) that the product was defective, (2) that the defect caused the plaintiff's injuries, and (3) that the defect existed at the time the product left the seller's

hands. *Davis v. Berwind Corp.,* 547 Pa. 260, 267, 690 A.2d 186, 199 (1997); *Berkebile v. Brantley Helicopter Corporation*, 462 Pa. 83, 93-94, 337 A.2d 893, 898 (1975). A product is in a defective condition if it is unreasonably dangerous for its intended use. Restatement (Second) of Torts, § 402A; *Tincher v. Omega Flex, Inc.*, 628 Pa. 296, 383-384, 104 A.3d 328, 388-389 (2014).

Under Pennsylvania law, to recover in a negligence action, the Plaintiff must plead and prove the following elements: (1) the existence of a duty of care; (2) a breach of that duty; (3) a causal relationship between the breach and the resulting injury; and (4) actual loss. *See Minnich v. Yost*, 817 A.2d 538, 541 (Pa. Super. 2003.)

Under Pennsylvania law, the implied warranty of merchantability means that goods were not "merchantable" at the time of sale. *M. Leff Radio Parts, Inc. v. Mattel, Inc.*, 706 F.Supp. 387, 394-395 (W.D. Pa. 1988)(*citing* 13 Pa.C.S.A. § 2314.)) Goods are merchantable when they are fit the ordinary purposes for which such goods are used. 13 Pa.C.S.A. § 2314(b)(3); *Eimco Corp. v. Joseph Lombardi & Sons*, 193 Pa. Super. 1, 6, 162 A. 2d 263, 266 (1960.) To establish a cause of action for breach of the implied warranty of merchantability require, a Plaintiff must plead and prove: (1) the existence of the implied warranty; (2) breach of the implied warranty; (3) a causal connection between the defendant's breach and the plaintiff's injury or damage; and (4) the extent of loss proximately caused by the defendant's breach. *Byrd v. Essex Silverline Corp.*, 2008 WL 81887 (E.D. Pa. Jan. 8, 2008).

Under any of these theories, in this case, at a minimum, Plaintiff must prove the product was in a defective or unsafe condition and that the defect caused the fire. Plaintiff is intending to rely on Mr. Flaherty to satisfy this burden. Absent his testimony, there is no evidence of a defect, let alone that the defect caused the fire. Without such evidence, Plaintiff cannot establish

the elements of its claim and LGEUS is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## III.    CONCLUSION

For the reasons set forth above, Mr. Flaherty's proffered opinions and testimony are not admissible. Plaintiff should be precluded from calling him as a witness. Without his testimony, Plaintiff cannot establish its claims and LGEUS is entitled to summary judgment. In the alternative, LGEUS requests a *Daubert* hearing with respect to the admissibility of Mr. Flaherty's testimony.

**SWEENEY & SHEEHAN**

**By:**    s/ Warren E. Voter
Warren E. Voter, Esquire
Attorney for Defendant,
LG Electronics USA, Inc.
19th Floor, 1515 Market St.
Philadelphia, PA 19102
PHONE:  (215) 563-9811
FAX:  (215) 557-0999
warren.voter@sweeneyfirm.com