IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALLSTATE INSURANCE COMPANY, a/s/o Thomas and Lisa Ellis <br><br> v. <br><br> LG ELECTRONICS USA, INC. | CIVIL ACTION <br><br> NO. 19-3529 |
|---|---|

## MEMORANDUM RE MOTION TO PRECLUDE PLAINTIFF'S EXPERT AND MOTION FOR SUMMARY JUDGMENT

**Baylson, J.** July 8, 2021

### I. Introduction

This is a products liability case arising from a fire which damaged a private residence. The homeowners' insurance company, Allstate, covered the damage and now brings this case against LG, alleging that an LG refrigerator was the cause of the fire. LG seeks to preclude the testimony of one of Plaintiff's experts, and argues it is entitled to summary judgment as well. As Plaintiff's expert meets the standard laid out in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and there are several disputes of material fact, Defendant's Motion will be denied.

### II. Facts and Procedural History

On March 10, 2019, the home of Tom and Lisa Ellis was badly damaged by a fire. Allstate Insurance Company, their homeowner's insurance provider, paid out $298,368.62 for the damage. Allstate now brings this subrogation action against LG Electronics. Allstate argues that the fire was caused by a refrigerator, which was designed and manufactured by LG. Several experts investigated the fire and provided their reports and conclusions regarding its cause.

Chris Givens, Chief of the Norwood Fire Company investigated the fire and found that the firefighters responding to the fire witnessed the fire coming from the top third of the refrigerator. Mr. Givens also found that the burn patterns were consistent with the theory that the refrigerator

1

was where the fire started. Mr. Givens solicited the opinions of five other fire chiefs who came to the same conclusion, that the fire started in the refrigerator.

Plaintiff retained Robert Buckley as an expert. Mr. Buckley has over fifty-two years of experience in firefighting, fire prevention, and fire investigation. Mr. Buckley visited the scene, viewed photos and other evidence from the scene, and interviewed Mr. and Mrs. Ellis and Mr. Givens. Mr. Buckley determined that the fire began in the interior top third of the refrigerator.

Plaintiff also retained Christoph J. Flaherty as an expert. His opinion is the subject of this Motion. Mr. Flaherty is an electrical engineer with over fifteen years of experience investigating failures of household products. Mr. Flaherty was retained to "provide electrical engineering expertise to the fire origin and cause investigation being conducted" by Mr. Buckley. ECF 32-5, Flaherty Report 1. In conducting his investigation, Mr. Flaherty reviewed several sources of information including photographs of the scene, reports of the other experts, testimony of the Ellises, and documentation related to the refrigerator.

Based on his review of this evidence, Mr. Flaherty first excluded all potential electrical failures external to the refrigerator as potential causes of the fire. Next, Mr. Flaherty concluded that the location of electrical arcing was consistent with a fire starting in the front of the top part of the refrigerator. He then explains that there are two potential causes of damage in this area. First is the "failure of the FD-HTR heater circuit insulation due to mechanical damage sustained over years of use" and second is "ignition of combustible food storage containers close to, or in contact with, the internal light fixture." Flaherty Report 5–6. Having ruled out abnormal use of the refrigerator as a possible cause, Mr. Flaherty concluded that the damage was sustained due to a manufacturing defect.

The methodology Mr. Flaherty employed is laid out in the National Fire Protection Association 921 – a Guide for Fire and Explosion Investigations ("NFPA"). In developing and testing a hypothesis, the NFPA states that first an investigator should use inductive reasoning to

2

develop one or multiple hypotheses, and then use deductive reasoning to test those hypotheses and rule out those which are not possible based on the evidence.

On January 27, 2021, Defendant filed the present Daubert Motion and Motion for Summary Judgment, seeking to exclude the opinion of Mr. Flaherty and arguing that without his testimony there was no dispute of material fact. ECF 32. Plaintiff responded on February 10, 2021, ECF 33, Defendant filed a reply on February 17, 2021, ECF 35, and Plaintiff filed a sur-reply on with leave of Court on February 25, 2021, ECF 40. On June 24, 2021, with leave of Court, Plaintiff filed a supplemental brief regarding a recently filed Pennsylvania Superior Court opinion. ECF 41. On June 30, Defendant sought leave to file a response, ECF 43, which the Court will grant along.

### III. Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods;
>
> and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, a district court judge functions as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. As a general proposition, Third Circuit law freely permits expert testimony as long as the expert has established basic qualifications, offers reliable testimony, and gives testimony that fits the facts of the case. See Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)

3

("Rule 702 . . . has a liberal policy of admissibility."); Linkstrom v. Golden T. Farms, 883 F.2d 269, 270 (3d Cir. 1989) ("Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions.").

Rule 702 imposes three requirements for admissibility of expert testimony: "(A) the proffered witness must be an expert, i.e., must be qualified; (B) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (C) the expert's testimony must assist the trier of fact." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). Defendant does not challenge Mr. Flaherty's qualifications, therefore only the second and third requirements are at issue here.

### a. Reliability

The reliability inquiry requires evaluating if "the expert's testimony is supported by good grounds." Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 81 (3d Cir. 2017). The Third Circuit has identified eight factors for district courts to consider in assessing whether "good grounds" support potential expert testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

In re Paoli R.R. Yard Pcb Litig., 35 F.3d 717, 742 n.8 (3d Cir. 1994). "While no one is dispositive, some analysis of these factors is necessary." UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 834 (3d. Cir. 2020).

The standard for determining reliability "is not that high . . . even given the evidentiary gauntlet facing the proponent of expert testimony under Rule 702. In re TMI Litig., 193 F.3d 613,

4

665 (3d Cir. 1999). The court's focus in assessing reliability "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. "The test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research." Karlo, 849 F.3d at 81. "A judge will often think that an expert has good grounds to hold the opinion that he or she does even though the judge thinks that the opinion is incorrect." Paoli, 35 F.3d at 744.

    b. **Fit**

An expert's testimony fits the case if the testimony will "assist the trier of fact." Paoli, 35 F.3d at 743. Thus, the fit requirement "goes primarily to relevance." Daubert, 509 U.S. at 591. Put another way, the fit requirement simply extends "the requirement of reliability, or 'good grounds,'... to each step in an expert's analysis all the way through the step that connects the work of the expert to the particular case." Paoli, 35 F.3d at 743.

## IV. Malfunction Theory

Several of the parties' arguments relate to the elements Plaintiff must prove in its case, therefore some review of products liability, and specifically malfunction theory, is relevant here. To succeed on a strict product liability claim under Pennsylvania law, "a plaintiff must demonstrate, inter alia, that the product was defective, that the defect caused the plaintiff's injury, and the defect existed at the time the product left the manufacturer's control." Barnish v. KWI Bldg. Co., 980 A.2d 535, 541 (Pa. 2009).

Under what is referred to as the malfunction theory of product liability, "when a product is destroyed or otherwise unavailable–as is often the case with fire damage–the plaintiff may prove the defect's existence by circumstantial evidence of a malfunction." Dalton v. McCourt Elec. LLC, 112 F. Supp. 3d 320, 327 (E.D. Pa. 2015) (Robreno, J.) (quotations omitted). To succeed under this theory, "the plaintiff must produce (1) evidence of the occurrence of a malfunction, (2) evidence eliminating abnormal use, and (3) evidence eliminating reasonable secondary causes for

the malfunction." Id. "Evidence supporting this theory relieves the plaintiff from the obligation to pinpoint the precise defect, and indicates that the alleged defect both caused the injury and existed when the product left the manufacturer's control." Id. at 327–28 (citing Barnish, 980 A.2d at 542).

V.  **Discussion**

Defendant argues that Mr. Flaherty's opinion will be unhelpful to a jury, is not rendered to reasonable degree of scientific certainty, is not relevant, and does not have a factual or scientific basis. All these arguments boil down to claiming that Mr. Flaherty cannot testify because he has not identified the specific cause of the fire, but instead identified two possible causes. Plaintiff responds that Mr. Flaherty has applied a reliable methodology to reach his conclusion as required by Daubert and Rule 702, and that he does not need to determine a single cause of the fire in order for his opinion to be helpful and relevant.

Considering the elements which Plaintiff must prove, it is not necessary for Mr. Flaherty to point to a single cause of the fire for his opinion to be helpful or relevant. As explained above, Plaintiff must present circumstantial evidence that the fire was due to a manufacturing defect in the refrigerator and not due to other causes, such as some unreasonable use by the Ellis family. Mr. Flaherty's opinion is certainly helpful to the jury and relevant on this issue. Mr. Flaherty ruled out all other potential causes of the fire and determined that there were two potential causes, both of which, if they were determined to be the actual cause, would be the result of a manufacturing defect. Therefore, Plaintiff need not show which of those two potential causes occurred, because either one would impose liability and Mr. Flaherty's opinion will be helpful in demonstrating the elements which Plaintiff is required to prove under malfunction theory.

Defendant also argues that Mr. Flaherty has not appropriately applied the NFPA because he did not perform testing regarding his hypotheses for the cause of the fire. However, the NFPA supports the process used by Mr. Flaherty, namely developing hypotheses and eliminating them,

6

and does not require him to conduct specific testing as Defendant claims. In <u>State Farm Fire & Cas. Co. v. Hartman Contractors</u>, the defendants made the same argument as here, and the Court rejected it, stating that the defendants' "argument with respect to testing ignores the fact that NFPA standards do not require physical experimentation." No. 14-6535, 2017 WL 2180292, at *7 (E.D. Pa. May 18, 2017) (DuBois, J.). In that case, the Court examined the expert's methods which included visiting the scene of the fire and observing the evidence, reviewing deposition testimony, and "analyz[ing] the evidence based on his knowledge of electrical engineering and home construction and accepted electrical engineering standards." <u>Id.</u> The Court then found that the expert's opinion was reliable. <u>Id.</u> The expert then eliminated other potential causes of the fire by reviewing the evidence and came to his conclusion. <u>Id.</u> Here, Mr. Flaherty conducted the exact same type of investigation and he is not required to conduct additional testing for his opinion to be reliable.

On this Motion, all that is required is for Plaintiff to show that its expert appropriately applied a reliable methodology. Defendant does not question that the NFPA methodology is inappropriate, and in fact its own experts relied on the same method. The NFPA does not require an expert to conduct specific tests that would definitively prove the source of the fire, and in many cases, as here, that would not be physically possible.

## VI. Summary Judgment

In Defendant's Motion it contended that without the testimony of Mr. Flaherty, there was no dispute of material fact on any of Plaintiff's claims and thus if its <u>Daubert</u> Motion is granted, its Motion for Summary Judgment should be granted as well. In its reply and supplemental briefing, Defendant contends that the malfunction theory of liability does not apply here because the defective product at issue was not destroyed and was available for Mr. Flaherty to inspect. Defendant then argues that if malfunction theory does not apply and Plaintiff has not proven the

7

definitive source of the fire, it has not adequately created a dispute of fact for purposes of summary judgment.

A recent Pennsylvania Superior Court case examined this exact issue and found that, considering "unequivocal precedent," "[p]ossessing, retaining, and having an expert examine a product does not preclude a plaintiff from advancing a product malfunction theory of liability." Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Sam's East, Inc., No. 727 MDA 2020, 2021 WL 1054384, at *4 (Pa. Super. Ct. Mar. 19, 2021). Defendant argues that the cases relied upon by the Court in Sam's East do not actually involve a situation where the defective product was available, and that this case is not precedential. Regardless, the holding of Sam's East is consistent with other cases from this District, as well as the purpose of the malfunction theory. In Dalton, for example, the expert witness "reviewed the physical evidence, inspecting the remains of the products" and the Court still applied malfunction theory. 112 F. Supp. 3d at 327. This holding is also consistent with the purpose of malfunction theory, namely to allow "a plaintiff, who cannot do so directly, to circumstantially prove that a product is defective by presenting evidence of a malfunction coupled with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction." Sam's East, Inc., 2021 WL 1054384, at *5. While the refrigerator in this case might not be destroyed or unavailable, the evidence in the record demonstrates that it was seriously damaged to the extent that an expert could not determine exactly what had happened to it. This is the exact situation in which malfunction theory applies.

As Plaintiff may rely on a product malfunction theory of liability, it has, with the testimony of Mr. Flaherty and others, created a dispute of fact for purposes of summary judgment.

**VII. Conclusion**

For the foregoing reasons, Defendant's Motion will be denied. An appropriate Order follows.